## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 09-10452 |
| FOOTHILLS TEXAS, INC., et al. | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Re Docket No. 176 |
| | ) | |

### <u>OPINION</u>[1]

Norman L. Pernick
Patrick J. Reilley
Cole, Schotz, Meisel, Forman
& Leonard, P.A.
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801

      -and-

Charles R. Gibbs (Argued)
David F. Staber
Sarah Link Schultz
Akin Gump Strauss Hauer & Feld, LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201

Counsel for Debtors and
Debtors in Possession

Dated: July 28, 2009

Sontchi, J. _____

Joseph J. McMahon, Jr. (Argued)
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Room 2207
Wilmington, Delaware 19801

Counsel for Roberta A. DeAngelis,
Acting United States Trustee

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## INTRODUCTION

Before the Court is the Debtors' motion seeking authorization to pay retention bonuses to two persons who are vice presidents of the Debtors. Section 503(c)(1) of the Bankruptcy Code governs payments for the purpose of inducing an insider to remain with the debtor's business. In order for a debtor to make such payments the criteria of section 503(c)(1) must be satisfied.

The issue in this case is whether the recipients are insiders? If not, section 503(c)(1) is inapplicable and the payments can, in all likelihood, be made. "Insider" is defined under the Bankruptcy Code by providing a non-exclusive list of persons, which includes an "officer of the debtor." The employees in this case are "vice presidents." Under the plain meaning of the words, a vice president is an officer.

A person holding an officer's title is presumptively an officer and, thus, an insider. A party seeking to rebut that presumption must present evidence sufficient to establish that the person holds the title of an officer in name only and, in fact, does not meet the substantive definition of the same, i.e., he or she is not taking part in the management of the debtor.

In this case, the two persons at issue are presumptively officers and insiders by virtue of their job titles. Moreover, based upon the evidence submitted at the hearing, both participate in the management of the Debtors and are, in fact, officers and insiders. The Debtors did not submit any evidence that would support a finding that the criteria of section 503(c)(1) are satisfied. Thus, the motion seeking authorization to pay the retention bonuses will be denied.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B), (M), and (O).

## STATEMENT OF FACTS[2]

The facts of this case are straight forward.  Foothills Resources, Inc. ("Foothills") and its subsidiaries (collectively, the "Debtors") filed Chapter 11 in February, 2009.  The Debtors are independent energy companies engaged in the acquisition, exploration, exploitation and development of oil and natural gas properties.  The Debtors have 10 employees.

### I.    The Employment Agreements

In 2006, Foothills hired James H. Drennan as its Vice President, Land and Legal and the parties entered into an employment agreement.  In October, 2008, Foothills and Mr. Drennan entered into a modification of his employment agreement, which provides, among other things, that if Mr. Drennan is employed on June 30, 2009 he is entitled to a one-time payment of 75% of his annual salary, i.e., $112,500.[3]  Mr. Drennan remained employed by Foothills through June 30, 2009, and, if the modified employment agreement is assumed he will be entitled to receive a retention payment of $112,500.

---

[2] The Court conducted an evidentiary hearing in this matter.  The facts set forth herein are based upon the evidence submitted at that hearing and the statements in the Debtors' motion.

[3] The employment agreement, as modified in 2008, also provides for payments in the event that Mr. Drennan is fired or there is a change of control before June 30, 2009.  As those events did not occur and there have been no such payments these provisions are not before the Court.

In 2006, Foothills also hired Michael Moustakis as its Vice President, Engineering and the parties entered into an employment agreement.  As with Mr. Drennan, in October, 2008, Foothills and Mr. Moustakis entered into a modification of his employment agreement, which provides, among other things, that if Mr. Moustakis is employed on June 30, 2009, he is entitled to a one-time payment of 75% of his annual salary, i.e., $135,000.[4]  Mr. Moustakis remained employed by Foothills through June 30, 2009, and, if the modified employment agreement is assumed he will be entitled to receive a retention payment of $135,000. [5]

## II.    Debtors' Organizational Structure

The Debtors' Chief Financial Officer was the sole witness at the hearing in this matter.  He stated that the Debtors' senior management team consists of the Chief Executive Officer, the President and himself.  These persons supervise the day to day management of the Debtors as a whole.

Mr. Drennan is the Vice President, Land and Legal.  His responsibilities include overseeing the Debtors' oil and gas leases and communicating with landlords regarding those leases.  In addition, Mr. Drennan is responsible for ensuring the Debtors are in compliance with state and federal laws and regulations and communicating with

---

[4] The employment agreement, as modified in 2008, also provides for payments in the event that Mr. Moustakis is fired or there is a change of control before June 30, 2009.  For the same reasons set forth in n. 3 above, these provisions are not before the Court.

[5] The Debtors also entered into an employment agreement and subsequent change in control, severance and retention agreement with Lynn M. Marks, who serves as an Administrative Assistant.  No party has argued that Ms. Marks is an officer and there was no objection to the Debtors' assumption of her modified employment agreement.

governmental authorities regarding the same.  Finally, Mr. Drennan provides "land and legal support" to the Debtors and their lenders.

Mr. Drennan reports to the President and is not a member of senior management.  He does not play any role in making operational, tactical or strategic decisions for the Debtors.  He is the sole employee in the Land and Legal Division and he does not supervise any employees.  The Debtors' CFO testified that, as a result of the Debtors' small size and their inability to pay competitive compensation, their sole motivation in offering Mr. Drennan a title was to assist in enticing him to work for the Debtors.  He further testified that Mr. Drennan's job is the "functional . . . equivalent of a manager" and that he would have been denominated as such if he had not been offered the title of vice president in an attempt to entice him to work for the Debtors.

Mr. Moustakis is the Vice President, Engineering.  His responsibilities include overseeing the Debtors' oil and gas production, evaluation of reserves, technical reporting and development of capital spending projects.  In addition, Mr. Moustakis provides "engineering and reserve support" for the Debtors' and their lenders.

Mr. Moustakis reports to the President and is not a member of senior management.  He does not play any role in making operational, tactical or strategic decisions for the Debtors.  Mr. Moustakis supervises four employees who work in the Debtors' Texas oil fields.  As with Mr. Drennan, the Debtors' sole motivation in offering Mr. Moustakis a title was to assist in enticing him to work for the Debtors; and Mr. Moustakis's job is the functional equivalent of a manager.

### III.   The Retention Agreements

At the time the Debtors entered into the  retention agreements, the Debtors were undergoing significant financial difficulties.  More specifically, in October, 2008, the Debtors were in default under their pre-petition credit agreement and had engaged Parkman Whaling LLC to assist the Debtors in evaluating strategic alternatives, including a possible sale of the company.  The Debtors entered into the retention agreements in an attempt to ensure that certain key employees of the Debtors' remained with the Debtors despite the uncertainty.[6]  These employees were critical to maintaining the Debtors' business and assisting Parkman Whaling in its efforts.  The employment agreements of the senior management were substantially different from the terms of the employment agreements of Messrs. Drennan and Moustakis and were not modified in October 2008 to provide for a retention bonus.[7]

### LEGAL DISCUSSION

### I.   Who Is An Officer Under Section 101(31) Of The Bankruptcy Code?

Section 503(c) of the Bankruptcy Code, which was adopted in 2005, imposes a variety of restrictions on the compensation that can be paid both to executives and other employees of company that is in bankruptcy.  These payments are not prohibited.  Rather, section 503(c) states that there shall not be any claim allowed or paid unless it meets the applicable standard.

---

[6] At this time, the Debtors entered into virtually identical retention agreements with two other employees, excluding Ms. Marks.  The Debtors have not sought to assume those agreements.

[7] In December, 2008, those agreements were modified for tax purposes.  Although they contain a severance component, they do not entitle the employees to any retention payment.  The Debtors have not sought to assume the employment agreements of its senior management.

Section 503(c)(1) governs payments for the purpose of inducing an insider to remain with the debtor's business.  The requirement in section 503(c)(1)(A) that payments may only be made to insiders that have "a bona fide job offer from another business at the same or greater rate of compensation," has proven virtually impossible for debtors to meet.[8]   In addition, section 503(c)(1)(C), which limits the amount of compensation for retention payable to insiders, has made such programs unattractive and unpersuasive to management -- even if section 503(c)(1)(A) can be satisfied.[9]

---

[8] One can argue that section 503(c)(1)(A) is counter-productive to debtors because the entire point of a retention payment plan is to discourage insiders from seeking alternative employment.

[9] Consider two scenarios:

● Debtor wants to make payments to retain its CEO who made $300,000 in 2008.   Debtor has made bonus payments averaging $2,000 to non-management employees during 2009.

- Payment to CEO can only be made if:

(i) CEO has an offer for employment at another company for $300,000 or more annually;

(ii) CEO's services are essential to debtor's survival; and

(iii) Payment does not exceed $20,000, i.e., 6.67% of CEO's current salary, which is 10 times the average payments to non-management employees during 2009.

●Debtor wants to make payments to retain its CEO who made $300,000 in 2008.   Debtor has not made bonus payments to non-management employees during 2009.

- Payment to CEO can only be made if:

(i) CEO has an offer for employment at another company for $300,000 or more annually;

(ii) CEO's services are essential to debtor's survival; and

(iii) Payment does not exceed $75,000, i.e., 25% of the CEO's 2008 salary

Interestingly, to the extent that section 503(c)(1) is intended to encourage retention payments be made to all employees rather than just senior management it is counter-productive.  For example, under the above scenarios, senior management is better off not providing bonus payments to non-management employees because in that instance the cap on payment is $75,000 rather than $20,000.  The $20,000 payment to the CEO under the first scenario could be increased to $75,000 or more by sufficiently increasing the bonus payments already being paid to non-management employees, however, the cost would be prohibitive. For example, in the second scenario. to increase the payment for non-management employees from $20,000 to $75,000 would require increasing the average bonus payment from $2,000 to $7,500.  In a company with 1,000 non-management employees this would cost the debtor $5.5 million, i.e., ($7,500 – $2,000) * 1,000.

Debtors have responded to the difficulties in satisfying section 503(c)(1) by arguing that the post-petition payments to insiders for which they are seeking authorization do not fall under the auspices of section 503(c)(1) because they are: (i) in the form of "incentive" payments rather than retention payments;[10] and/or (ii) not for the benefit of an insider.  In this case, the Debtors argue that Messrs. Drennan and Moustakis are not officers of Foothills and, thus, not insiders.  If so, section 503(c)(1) would be inapplicable.[11]

"Insider" is a defined term under section 101(31) of the Bankruptcy Code.  The relevant provision states that:

> (31) The term "insider" includes--
>
>             * * *
>
>      (B) if the debtor is a corporation--
>
>          (i) director of the debtor;
>
>          (ii) *officer of the debtor*;
>
>          (iii) person in control of the debtor;
>
>          (iv) partnership in which the debtor is a general partner;

---

In any event, the amount of the retention payments under these scenarios are well below the amount generally sought by the debtors under a retention plan.  For example, in this case, the Debtors seek authority to make payments constituting 75% of the recipients' base salary.

[10] *See, e.g., In re Nellson Nutraceutical*, 369 B.R. 787, 801-03 (Bankr. D. Del. 2007) (allowing payments to insiders because primarily motivational and not retentive); *In re Global Home Products, LLC*, 369 B.R. 778, 786 (Bankr. D. Del. 2007) (allowing payments to insiders that are primarily motivational and only coincidentally retentive); and *In re Dana Corp.*, 358 B.R. 567, 577 (Bankr. S.D.N.Y 2006) (allowing payments to insiders even though they might have some retentive impact because any such impact was merely incidental).

[11] Section 503(c)(2) governs severance payments to insiders.  Section 503(c)(3) applies to payments made outside the ordinary course of business for the benefit of officers, managers and consultants, provided, however, that sections (c)(1) or (2) are not applicable.  As the payments here are clearly retentive, section 503(c)(2) is not implicated.  Section 503(b)(3) would only be applicable were the Court to find that Messrs. Drennan and/or Moustakis are not officers.  *See* n. 54, infra.  Thus, as a preliminary matter, the Debtors' motion rises or falls under section 503(c)(1).

> (v) general partner of the debtor; or
>
> (vi) relative of a general partner, director, officer, or person in control of the debtor;

11 U.S.C. § 101(31)(B) (emphasis added).

In *Winstar Communications, Inc.*, the Third Circuit recently addressed the meaning of the term insider under the Bankruptcy Code.[12]   The issue in *Winstar Communications* was whether the defendant in a preference action was a "non-statutory insider." Noting that Congress uses the word "includes" in section 101(31), the Third Circuit held that there is "a category of creditors, sometimes called 'non-statutory insiders,' who fall within the definition but outside of any of the enumerated categories."[13]   The Court rejected the argument that only a "person in control" could be an insider.[14]  Rather, the Court held that "the question 'is whether there is a close relationship [between debtor and creditor] and ... anything other than closeness to suggest that any transactions were not conducted at arm's length.'"[15]   The Third Circuit's focus of inquiry is in accord with the plain meaning of insider – "a person who is within some society, organization, etc.; a person who is a party to a secret, *esp. so as to gain an unfair advantage*."[16]

---

[12] *Schubert v. Lucent Technologies Inc. (In re Winstar Communications, Inc.)*, 554 F.3d 383 (3rd Cir. 2009).

[13] *Id.* at 395 (citing *Anstine v. Carl Zeiss Meditec AG (In re U.S. Med., Inc.)*, 531 F.3d 1272, 1276 (10th Cir. 2008).

[14] *Id.* at 396 ("[N]ot all of the enumerated insiders possess actual control over the debtor. For example, a 'relative of a general partner, director, officer, or person in control of the debtor' is an insider. 11 U.S.C. § 101(31)(B)(vi). Similarly, a 'partnership in which the debtor is a general partner' is an insider-even though the direction of control is reversed, i.e. the debtor as general partner controls the partnership. 11 U.S.C. § 101(31)(B)(iv). *Cf.* 11 U.S.C. § 101(31)(E) (providing that an 'affiliate' of the debtor is an insider, even though an affiliate under § 101(2)(B) includes a corporation '20 percent or more of whose outstanding voting securities are directly or indirectly owned ... by the debtor').").

[15] *Id.* (quoting *U.S. Med., Inc.*, 531 F.3d at 1277).

[16] I SHORTER OXFORD ENGLISH DICTIONARY 1394 (emphasis added).

Included in the enumerated categories of insiders of a corporation are its officers.[17]  "Officer" is not defined under the Bankruptcy Code.  It goes without saying (or at least citation) that in considering a statute the Court starts with its plain meaning. An officer is a "person holding office and taking part in the management or direction of a society or institution, esp. one holding the office of president, treasurer or secretary."[18] "Management," in this context, is defined as "the administration of (a group within) an organization or commercial enterprise."[19]

The "officers" at issue in this case are vice presidents.  A vice president is "[a] person representing or deputizing for a president; *an official* who ranks immediately below a president."[20]  An official is obviously an officer.[21]  Thus, under the plain meaning of the words, a vice president is presumptively an officer, who, in turn, is an insider.  Nonetheless, the mere title of a person does not end the inquiry. [22]

Just as there may be non-statutory insiders that fall within the definition of an insider but are outside of the enumerated categories,[23] there may be persons that fall within the enumerated categories but do not meet the definition of the category.  Under

---

[17] 11 U.S.C. § 101(31)(B)(ii).

[18] II SHORTER OXFORD ENGLISH DICTIONARY 1988.  Note that the term is further modified to state "esp[ecially] a president, treasurer or secretary."  The use of the word especially makes the list of examples illustrative rather than exclusive.

[19] I SHORTER OXFORD ENGLISH DICTIONARY 1692.

[20] II SHORTER OXFORD ENGLISH DICTIONARY at 3527 (emphasis added).

[21] *Id.* at 1988 (an official is a person "[h]olding office . . .").

[22] *See, e.g., Duke Energy Royal, LLC v. Pillowtex Corporation ( In re Pillowtex, Inc.),* 349 F.3d 711, 716 n. 6 (3d. Cir. 2003) (where the parties to a contract intended to create a "true lease" it is presumed to be a true lease and the party seeking to establish that it is "something other than what it purports to be" bears the burden of proof to rebut the presumption).

[23] *Winstar Communications,* 554 F.3d at 395.

the plain meaning of the words, the question is whether a person is taking part in the management of the debtor.[24]   In order to overcome the presumption that a person holding an officer's title is not what he or she appears to be requires submission of evidence sufficient to establish that the officer is, in fact, not participating in the management of the debtor.[25]

The Debtors cite to a number of cases that stand for a different proposition, i.e., an officer is a person who is in control of a debtor.[26]   That standard necessarily limits officers to the very highest level of senior management.   The Court will address these cases in chronological order.

The opinion in *NMI Systems* is the seminal case defining officer under section 101(31).   *NMI Systems* involved a preference action brought against a vice president of

---

[24] The definition neither states nor implies that the management of the debtor must be at the most senior level.

[25] The Court is aware that its holding may be thought to render the use of the word "officer" in section 503(c)(3) to be superfluous as the Court has, in effect, held that an officer is a manager who is sufficiently senior to hold the title of an officer.   11 U.S.C. § 503(c) ("(c) Notwithstanding subsection (b), there shall neither be allowed, nor paid . . . (3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, *including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants* hired after the date of the filing of the petition.") (emphasis added)).   However, as all managers are not officers, the use of both terms is not redundant.   Rather, the statute provides that the standard under section 503(c)(3) governing a payment that it is made to managers and consultants, who are not necessarily insiders, is different on its face from that which applies to payments made to directors and control persons, who are insiders.   The former must be "justified by the facts and circumstances of the case" while the latter must satisfy the business judgment test under section 363 (provided sections 503(c)(1) and (2) are not applicable).   Whether there is any substantive difference between the two standards and, if so, what constitutes "justified by the facts and circumstances of the case" is an issue for another day.

[26] *Smith v. Ruby (In re Public Access Technology.com, Inc.)*, 307 B.R. 500 (E.D. Va. 2004); *In re CEP Holdings, LLC*, 2006 WL 3422665 (Bankr. N.D. Ohio Nov. 28, 2006); *Principal Mutual Life Insurance Co. v. Lakeside Associates, L.P. (In re DeLuca)*, 194 B.R. 797 (Bankr. E.D. Va. 1996); and *NMI Systems, Inc. v. Pillard (In re NMI Systems, Inc.)*, 179 B.R. 357 (Bankr. D.C. 1995).

the debtor.  The bankruptcy court declined to consider the defendant as an officer based

solely on his title.

> Pillard's title of vice president and mid-management responsibilities of
> running the company's consulting division ought not suffice to make him
> an officer if he did not enjoy the elements of being an officer that would
> *per se* put him in a position of advantage as against other creditors. The
> difficult task is to articulate what, as a matter of law, suffices to make one
> a corporate officer as that term is used in the Bankruptcy Code's definition
> of insider.[27]

The *NMI Systems* court determined that an officer under the Bankruptcy Code

"obviously includes anyone holding a position in which that person controls the

decision *whether to pay an antecedent claim*."[28] But the court went on to hold that the

category is broader than "control" and includes "those in the collective group exercising

overall authority regarding the debtor's corporate decisions who, as members of that

insider group, are in a position to exert *undue influence over corporate decisions regarding*

*payment of their claims in tight financial times* including those who are privy to critical

information regarding the debtor's financial stability and able to act to their advantage

on the basis of such information."[29]

In so ruling, the bankruptcy court was heavily influenced by the fact that the case

before the court was a preference action.  That is reflected in the court's emphasis in the

quotations above on the payment of claims.  Indeed, the court specifically states that the

test of whether one is an officer "ought to be one that takes account of the *bankruptcy*

---

[27] *NMI Systems,* 179 B.R. at 368.

[28] *Id.* at 370 (emphasis added).

[29] *Id.* (emphasis added).

*policies behind the use of the term 'insider' in the preference statute* and that is best designed to further those policies."[30]

The *NMI Systems* court was mistaken in focusing so heavily on the preference statute in determining the appropriate definition of officer. The term "insider" appears several times in the Bankruptcy Code, including sections 303 (involuntary petitions), 1129(b) (confirmation of a plan), and, since 2005, section 503(c) (payments to insiders). The definition of officer and, thus, insider, should not be tailored to fit just one section of the Bankruptcy Code. Rather, the definition should be based upon the plain meaning of the word officer. The effect of the holding in *NMI Systems* is to add an adjective such as "senior" or "controlling" to the term "officer of the debtor" in section 101(31)(B)(ii). Congress has already made a similar limitation. Managers are not insiders. Rather, managers that are sufficiently senior to hold the title of an officer are insiders. There is no rational basis under the plain meaning of the relevant words to further limit the definition of officers to those "in the collective group exercising overall authority regarding the debtor's corporate decisions."[31]

The issue in *DeLuca* was whether the votes of a creditor that was exercising financial control over certain aspects of the debtor's business should be included in determining whether an impaired class had accepted a proposed plan of reorganization

---

[30] *Id.* at 369.

[31] *Id.* at 370. The Debtors argue that as a result of "title inflation," the use of an officer title, in fact, does not reflect that such persons are sufficiently senior to hold the title of an officer and, thus, should not be considered as such. While that may be true, it is an argument for Congress and not this Court. This Court must limit its inquiry to the plain meaning of the statute and not a debtor's misapplication of that term's plain meaning.

(excluding the vote of insiders) so that the debtor could cram down the plan on its creditors under section 1129(b).[32]  Importantly, there was no allegation that the creditor was an officer.  Indeed, as the debtor in *DeLuca* was a partnership, officers are not even included in the relevant definition of insider.[33]  Rather, the analysis was whether the creditor was a person in control.  While an officer may be a person in control, the words are not interchangeable.[34]  Thus, the *DeLuca* case is entirely inapplicable to the issue before the Court.

*Public Access Technology.com* was an appeal of the entry of summary judgment in a preference action.[35]  The issue was whether the defendant, an executive vice president of the debtor, was an officer.  The bankruptcy court below held that because the defendant held the title of executive vice president he was, *per se*, an officer and, thus, an insider.[36]  On appeal, the district court disagreed, holding that the defendant's stipulation that he was an executive vice president, without more, was insufficient to establish that he was an officer of the debtor under section 101(31).  The district court did not articulate what evidence was required to prove that the defendant was an officer, noting only that there was no evidence whatsoever in the record on the issue.[37]  Moreover the court went on to state in a footnote that "[t]he Bankruptcy Code itself

---

[32] *DeLuca*, 194 B.R. at 801.

[33] 11 U.S.C. § 101(31)(C).

[34] *See, e.g., Winstar Communications,* 554 F.3d at 395-97.

[35] *Public Access Technology.com,* 307 B.R. at 502.

[36] *Id.* at 505 ("the bankruptcy court held that 'Smith admits that he was the debtor's Executive Vice President, and we do not have to carry the inquiry any further.'").

[37] *Id.* at 506.

does not define the term 'officer.'  As such, this court finds no basis for proclaiming a rigid rule to determine who qualifies as a corporate officer – beyond observing that *proof of officer status requires more than just a title, and less than actual control of the corporate debtor*, this court does not seek to constrain whatever inquiry the practical experience of the bankruptcy court may lead it to conduct."[38]  Thus, the district court reversed the entry of summary judgment and remanded to the bankruptcy court.

While the district court did not state in *Public Access Technology.com* that a person with the title of an officer is presumptively the same, its opinion is otherwise consistent with the Court's holding in this case.  In *dicta*, the court noted that title alone is insufficient to establish that a person is an officer.  In addition, the court implicitly rejected the *NMI Systems* holding that control of the debtor is the relevant inquiry.  But, as the decision does not specifically state the standard for determining whether a person is an officer other than to set broad parameters and it does not state what evidence is required to make that determination, it has limited applicability to the issue before the Court.[39]

Finally, in an unpublished "interim" opinion, the bankruptcy court in *CEP Holdings* addressed the question of whether certain of the debtor's vice presidents as well as its chief financial officer were officers for purposes of applying section 503(c)(3)

---

[38] *Id*. (emphasis added).

[39] The district court does provide some examples of evidence that may be used, in whole or in part, to establish whether a person is an officer. *Id*. ("There are no affidavits, articles of incorporation, corporate minutes, resolutions, or any documents or evidence that show this title makes [the executive vice president] an officer of the corporation.").

of the Bankruptcy Code.[40]  Section 503(c)(3) provides that transfers or obligations not addressed by sections 503(c)(1) and (2) that are outside the ordinary course of business for the benefit of, among others, officers must be "justified by the facts and circumstances of the case."[41]

The bankruptcy court adopted the *NMI Systems* standard for determining whether a person is an officer.[42]  Interestingly, however, the court stated in a footnote that "the record in this case [does not] suggest . . . that the Potential Plan Participants possess characteristics that should render them insiders even if the Court finds that they are not 'in control' of the Debtor."[43]  In any event, the court went on to hold that what constitutes "control" and, presumably whether a person is an officer will "vary according to context."[44]  In the context of section 503(c)(3), the court adopted the following standard:

> insider status under the 'control' provision of Section 101(31)(B)(iii) should be determined, at least in part, by reference to the payment recipient's control of the specific transaction under consideration and the impact of that transaction upon the debtor's creditors. Phrased in terms of Section 503(c)(3), the proposed payment recipient's control over the specific transaction and its impact upon other creditors constitute 'facts and circumstances' that must be considered before determining that the transaction is justified. With respect to payment programs such as the Plan, the Court believes it is important to know whether the potential plan recipient had significant input into the negotiation of the plan (including the amount of additional compensation that the employee would receive under the plan). There are other factors relevant to the determination,

---

[40] *CEP Holdings*, 2006 WL 3422665.

[41] 11 U.S.C. § 503(c)(3).

[42] *CEP Holdings*, 2006 WL 3422665 at *2.

[43] *Id.* at *2 n.2.

[44] *Id.* at *2.

namely the base salary compensation of the employee and the additional responsibilities that the employee is required to undertake in order to receive the additional compensation.[45]

This Court disagrees that the meaning of "officer" should vary according to the context in which the word is used. That would be inconsistent with the Third Circuit's statement in *Winstar Communications* that the relevant inquiry includes whether there is "anything other than closeness to suggest that *any* transactions were not conducted at arm's length."[46]  To adopt the holding in *CEP Holdings* would also ignore the plain meaning of the word officer and, instead, alter its meaning depending upon its application and effect.  This is exactly the type of analysis that the plain meaning doctrine is designed to thwart.

A more appropriate holding in *CEP Holdings* would have been that the type of evidence that might support finding a person to be an officer may vary from case to case based on the facts and circumstances surrounding the debtor's business.   This Court agrees with the suggestion in *Public Access Technology.com* that a flexible approach should be taken in considering what evidence might rebut the presumption that a person who holds the title of an officer is, in fact, an officer.[47]

Determining whether a person is an officer is the first step.  The next question is whether that renders him or her an insider.   Here, no further inquiry is needed.

---

[45] *Id.* at *3.

[46] *Winstar Communications,* 554 F.3d at 396 (emphasis added).  Note that the court used "any transaction" not "transaction before the court" or similar language.

[47] *Public Access Technologies.com,* 307 B.R. at 506.

Congress has explicitly stated that an officer is an insider.[48]  Having been found to be the former, one must be the latter.[49]  Thus, under the plain meaning of the statute an officer is, *per se*, an insider.[50]

In summation, a person holding the title of an officer, including a vice president, is presumptively what he or she appears to be – an officer and, thus, an insider.  To overcome that presumption requires the submission of evidence sufficient to establish that the officer does not, in fact, participate in the management of the debtor.

## II.   The Debtors' Vice Presidents Are, In Fact, Officers And, Thus, Insiders Under Section 101(31) Of The Bankruptcy Code

Now we turn to whether Messrs. Drennan and Moustakis are, in fact, officers and insiders of the Debtors, i.e., whether they are participating in the management of the Debtors.  The Court finds that the evidence is insufficient to rebut the presumption that Messrs. Drennan and Moustakis are officers and insiders of the Debtors.

Neither Mr. Drennan nor Mr. Moustakis are members of senior management and they do not play a role in the management of the company as a whole.  Nonetheless they are in charge of important aspects of the Debtors' business, which is the acquisition, exploration, exploitation and development of oil and natural gas properties.

---

[48] 11 U.S.C. § 101(31)(B).

[49] It does not, however, follow that having been found not to be an officer one is, per se, not an insider. While, in that instance, section 101(31)(B) would not be a proper basis to a person to be an insider, there may be facts that would support finding a person to be an insider under the other categories of the definition of insider, i.e., director, person in control, etc., or as a non-statutory insider.

[50] Plain meaning is the starting point of statutory analysis but it is not the mandatory exit. Hon. Thomas F. Waldron and Neil M. Berman, *Principled Principles of Statutory Interpretation: A Judicial Perspective After Two Years of BAPCPA*, 81 AM. BANKR. L.J. 195, 232 (2007)  In this instance, none of the exceptions to applying plain meaning of the text are applicable (such as doing so would render an absurd result).

Mr. Drennan oversees the Debtors' oil and gas leases and communications with landlords regarding those leases.  Without those leases, the Debtors would have no business. In addition, he is responsible for ensuring the Debtors are in compliance with state and federal laws and regulation – obviously a requirement of staying in business. Mr. Moustakis, in turn, oversees the Debtors' oil and gas production, evaluation of reserves, technical reporting and development of capital spending projects.  Again, without these activities the Debtors would have no business.

Management is "the administration of (a group within) an organization or commercial enterprise."[51]  Certainly, one would normally consider the supervision of employees as a necessary component of management.  But, that is not necessarily the case.  The Debtors have 10 employees, including three members of senior management; an administrative assistant; and Messrs. Drennan and Moustakis.  Mr. Drennan does not supervise any employees while Mr. Moustakis supervises four persons.  In a company of this size, it is not surprising that a person could hold a position of critical importance in *managing the business enterprise* but still only supervise few or no employees.  Thus, the number of employees under the officer's supervision is of little importance in this case.

Given their broad responsibilities over significant aspects of the Debtors' business as well as the fact that they report directly to the Debtors' President, both men are clearly participating in the management of the Debtors.  Indeed, the Debtors' CFO testified that he considered both of them to be performing the job of a *manager*.  This, in

---

[51] I SHORTER OXFORD ENGLISH DICTIONARY 1692.

and of itself, is sufficient evidence to find that Messrs. Drennan and Moustakis are participating in the management of the Debtors' business.  Thus, the Court finds that the Debtors have not presented sufficient evidence to rebut the presumption that Messrs. Drennan and Moustakis are officers and, thus, insiders.[52]

### III. As The Debtors' Vice Presidents Are Insiders, The Court Will Deny The Motion To Authorize Assumption Of Their Employment Agreements Under Section 365 And Payment Of The Retention Payments Under Section 363

The motion before the Court seeks authorization for the Debtors to assume the modified employment agreements under section 365.  In addition, provided that the agreements are assumed, the Debtors seek authority to make the retention payments as a use of property of the estate (outside the ordinary course of business) under section 363(b) of the Bankruptcy Code.  The governing standard for both requests for relief is whether the proposed action would be a reasonable exercise of the Debtors' business judgment.[53]  As the Debtors' sole motivation for filing and prosecuting the motion is to obtain authority to make retention payments that are prohibited by section 503(c)(1) of the Bankruptcy Code, it is not a reasonable exercise of the Debtors' business judgment

---

[52] In opposition to the motion, the United States Trustee argues that the identification of Messrs. Drennan and Moustakis as officers in the Debtors' most recent 10K and the Statements of Financial Affairs filed in this case establishes that they are officers.  The Court has held, however, that the inquiry is whether they are, in fact, participating in the management of the Debtors.  As the identification of Messrs. Drennan and Moustakis as officers on these public documents is additional evidence of the already established conclusion that they are presumptively officers, it does not relate to the inquiry into whether they are, in fact, participating in management.  Thus, it is irrelevant.

[53] *In re Taylor*, 913 F.2d 102 (3rd Cir. 1990) (assumption of executory contracts); and *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986) (use of property of the estate outside the ordinary course of business).

to assume the agreements and/or make the payments.[54]    Thus, the motion will be denied.

## CONCLUSION

A person holding the title of an officer, including vice president, is presumptively what he or she appears to be – an officer and, thus, an insider. Nonetheless, this presumption can be rebutted by evidence sufficient to establish that the person does not participate in the management of the debtor.  Messrs. Drennan and Moustakis are presumptively officers and the Debtors have failed to submit evidence sufficient to rebut that presumption.

A retention payment may only be made to an insider if the standard under section 503(c)(1) has been satisfied.  As there is no evidence that section 503(c)(1) has been met, the retention payment cannot be made.  Since the Debtors' sole reason for filing and prosecuting the motion is to obtain authorization to make the retention payments, the motion to assume those agreements will be denied.

An order will be issued.

---

[54] Had section 503(b)(1) not been applicable, the Court would have been required to determine whether the requested relief is "justified by the facts and circumstances of the case."  Whether that standard would have been met  in that instance is not before the Court.